THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT MAGHAKIAN | ) | CASE NO.  3:12-cv-02346-UN4 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | *Assigned to:* |
| | ) | District Judge James M. Munley |
| CABOT OIL & GAS CORPORATION, | ) | |
| FACTORY EQUIPMENT | ) | |
| EXCAVATING, and GASSEARCH | ) | *Oral Argument Requested* |
| DRILLING SERVICES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT GASSEARCH DRILLING
SERVICES CORPORATION'S MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.5, Defendant GasSearch Drilling Services Corporation ("GDS") files this Brief in Support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").  This Court should dismiss Plaintiff's First Amended Complaint against GDS because Plaintiff Scott Maghakian ("Plaintiff") failed to allege any facts that would support a negligence claim against GDS.  Specifically, Plaintiff:  (i) failed to allege facts sufficient to show that GDS was a possessor of property such that a duty to warn or protect would arise; (ii) even if GDS were a possessor, Plaintiff failed to allege facts sufficient to show that GDS breached a duty; and (iii) Plaintiff specifically alleged that Defendant Factory Equipment

Excavating's ("Factory Equipment") negligent conduct directly caused Plaintiff's injuries, and failed to allege facts that would permit this Court to impute that negligence to GDS.

## I. INTRODUCTION

Plaintiff alleged that he was injured by the negligent conduct of Defendant Factory Equipment while he was present on property leased by Defendant Cabot Oil & Gas Corporation ("Cabot") in Susquehanna County, Pennsylvania, on or about November 29, 2010. Doc. 42, ¶ 1.  Plaintiff was working as an independent contractor for Landstar Corp. ("Landstar") moving rig parts, when another independent contractor on that same location, Defendant Factory Equipment, dumped "soil cement or some other hazardous substance" in a negligent manner, resulting in a "very large cloud of dust" to which Plaintiff was exposed.  Doc. 42, ¶¶ 1, 8 and 11.  As a result of the exposure, Plaintiff allegedly was injured.  Doc. 42, ¶ 1.

Plaintiff now attempts to impute Defendant Factory Equipment's negligent conduct and subsequent liability to GDS.  Plaintiff's claim of negligence against GDS is based solely on the allegations that:  (i) GDS, a subsidiary of Cabot, was cleaning up the well site "on behalf of" Cabot (Doc. 42, ¶ 5); and (ii) GDS hired Defendant Factory Equipment "to come onto the well site and dump the soil

cement" (Doc. 42, ¶¶ 8 and 12). Plaintiff does not, and cannot, allege that he was working directly or indirectly for GDS.[1]

In sum, Plaintiff was hired by a non-party to perform work for that non-party on property leased by Cabot. Cabot's subsidiary and contractor, GDS, was one of several contractors working on the property when Plaintiff accessed the location. The only party to which Plaintiff attributes negligent conduct is Defendant Factory Equipment, which was hired as a contractor by GDS. Plaintiff alleged that while he was at the well site, Defendant Factory Equipment dumped material on the location in a negligent manner which created a large dust cloud that allegedly injured him. On these bare facts, Plaintiff asserts the bald legal conclusions that: (i) GDS had a duty of reasonable care to warn and protect Plaintiff from danger and dangerous conditions on the well site; and (ii) GDS breached that duty by failing to warn and protect Plaintiff. Doc. 42, ¶ 12.

This Court should grant GDS' Motion with prejudice because:

(1) Plaintiff failed to plead facts that, if accepted by this Court as true for the purpose of a motion to dismiss, would establish that GDS owed a legal duty to warn and protect Plaintiff from danger and dangerous conditions on the well site. Such a duty could exist only if GDS were a "possessor" of the property. But Plaintiff's sole factual allegations against GDS—that: (i) GDS was hired to clean up a well location leased by its parent corporation, Cabot; and (ii) GDS hired Factory

---

[1] Plaintiff was a contractor hired by Landstar to move a drilling rig owned by Helmerich & Payne, Inc. ("H&P"). Motion, ¶ 9, n2. H&P was in the process of moving its rig from the Cabot well site in Susquehanna County to a Chief Oil & Gas Corporation well site in Sullivan County, Pennsylvania. *Id*.

                Equipment to transport and deposit material on the well location—are insufficient to show that GDS was a possessor of the property.

(2)      Even if GDS were a possessor of the property upon which Plaintiff allegedly was injured, which it was not, any duty GDS owed to Plaintiff by virtue of being a possessor would have been limited based on Plaintiff's legal status on the location, and Plaintiff did not plead facts to establish that GDS breached that limited duty.

(3)      Finally, Plaintiff alleged that Factory Equipment, a contractor hired by GDS, was negligent in the manner in which Factory Equipment deposited material on the location and that Factory Equipment's negligence was the direct cause of Plaintiff's injuries. Plaintiff did not allege facts that would permit this Court to impute Factory Equipment's negligence to GDS.

Because Plaintiff did not and cannot allege sufficient facts to state a plausible claim of negligence against GDS, this Court should dismiss Plaintiff's First Amended Complaint against GDS with prejudice.

## II.   STATEMENT OF QUESTIONS INVOLVED

**Should This Court Dismiss Plaintiff's First Amended Complaint Against GDS Because Plaintiff Failed to Allege Facts Sufficient to Show That GDS Was a Possessor of the Property Upon Which Plaintiff Allegedly Was Injured Such That a Duty to Warn or Protect Would Arise?**

Suggested Answer:     Yes.

**Should This Court Dismiss Plaintiff's First Amended Complaint Against GDS Because Even if This Court Considers GDS a Possessor, Any Duty Owed to Plaintiff Would Have Been Limited Based on Plaintiff's Legal Status, and Plaintiff Failed to Allege Facts Sufficient to Show That GDS Breached That Duty?**

Suggested Answer:     Yes.

**Should This Court Dismiss Plaintiff's First Amended Complaint Against GDS Because Plaintiff Specifically Alleged That Defendant**

- 4 -

**Factory Equipment's Negligence Was the Cause of Plaintiff's Injuries, and Plaintiff Did Not Plead Facts That Would Permit This Court to Impute That Negligence to GDS?**

Suggested Answer:　　Yes.

## III.　STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule 12(b)(6), courts undertake a three-step analysis to determine whether a complaint adequately states a claim upon which relief may be granted:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotations omitted).  To survive a motion to dismiss, a plaintiff must "plead more than the possibility of relief," but rather the complaint must "show such an entitlement with its facts."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, or credit a complaint's bald assertions or legal conclusions." *Mickel Drilling Partners v. Cabot Oil & Gas Corp.*, No. 3:CV-11-0061, 2012 WL 4953081, at *5 (M.D. Pa. Oct. 16, 2012) (internal citation and quotations omitted); *see also Zupp v. Cabot Oil & Gas Corp.*,

No. 3:CV-12-2333, 2013 WL 1935358, at *4 (M.D. Pa. May 9, 2013) (court need not credit bald assertions and legal conclusions of complaint).[2] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Mickel DrillingPartners*, 2012 WL 4953081, at *4 (quoting *Iqbal*, 556 U.S. at 679).

## IV.   ARGUMENT

Plaintiff's First Amended Complaint should be dismissed against GDS because it fails to allege facts sufficient to state a plausible claim to relief against GDS.  To state a claim for negligence, Plaintiff must plead facts that, if accepted by this Court as true for the purpose of a motion to dismiss, would establish that GDS breached some legally-recognized duty it owed to the Plaintiff.  *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 596 (Pa. 2012) (citing *Bilt–Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 280 (Pa. 2005)).

Plaintiff failed to state a claim for negligence against GDS because:  (i) Plaintiff did not allege any facts to support his bald legal conclusion that GDS owed him a duty to protect him from danger on the well location or warn him about dangerous conditions existing on the well location, as there are no factual allegations in the First Amended Complaint that show that GDS was a "possessor" of the well site, as opposed to merely being present there; (ii) even if GDS were a

---

[2] Unreported cases are attached.

possessor of the well site, any duty GDS owed to Plaintiff by virtue of being a possessor would have been limited, and Plaintiff did not allege facts sufficient to demonstrate that GDS breached that limited duty; and (iii) Plaintiff specifically alleged that the negligent conduct of Defendant Factory Equipment was the direct cause of Plaintiff's injuries, and Plaintiff did not plead facts that would permit this Court to impute that negligence to GDS.

### A. Plaintiff Failed to Plead Facts Sufficient to Show That GDS Was a Possessor of the Property upon Which Plaintiff Allegedly Was Injured and, Therefore, GDS Did Not Owe a Legal Duty to Plaintiff to Protect or Warn Against Dangerous Conditions on That Property.

In light of Plaintiff's bald legal conclusions that GDS had a duty to protect Plaintiff from danger and dangerous conditions on the well site and a duty to warn Plaintiff of any dangerous conditions, it appears that Plaintiff is attempting to assert some sort of premises liability theory of negligence against GDS, as if GDS were the "possessor" of the property upon which Plaintiff allegedly was injured. *See* RESTATEMENT (SECOND) OF TORTS § 342 (providing that in certain circumstances, a "possessor of land" owes a duty of reasonable care to warn or protect others against dangerous conditions on the land). But Plaintiff did not allege any facts that would establish that GDS was a "possessor" such that GDS would have had a duty to warn or protect.

"In order for a party to be a 'possessor' of land, it must meet one of the following descriptions:  it must be in occupation of the land with the intent to control it, it must have been in occupation of the land with intent to control it if no other party has done so subsequently, or it is entitled to immediate occupation if neither of the other alternatives apply." *Blackman v. Federal Realty Investment Trust*, 664 A.2d 139, 142 (Pa. Super. Ct. 1995).  Simply being present on the land (or even being an owner of the land) is insufficient to make one a "possessor." *See, e.g.*, *Rudy v. A-Best Prods Co.*, 870 A.2d 330, 333 n.4 (Pa. Super. Ct. 2005) (holding that neither part-owners of a facility nor a company that "'provided professional support services' to the operators" of the facility were possessors when there was no evidence that they actually occupied the facility with intent to control it); *Blackman*, 664 A.2d at 142 (holding that an owner of an easement must also be shown to "possess sufficient occupation and control over the land," which depends on "the manner in which the party exercises the prerogatives of that easement," to be considered a possessor).

Here, the only factual allegation that connects GDS to the well site where Plaintiff claims he was injured is the allegation that GDS was hired by Cabot to perform some work on the location.  Doc. 42, ¶ 12.  Even if true, the allegation that GDS was a contractor performing work at the well site is not remotely sufficient to establish that GDS was the "possessor" of the property.  If it were, then Plaintiff,

who also was performing work as a contractor on the location (Doc. 42, ¶ 1), would also be a "possessor" with potential duties to warn or protect others against dangerous conditions at the site.

Plaintiff did not plead any facts showing that GDS occupied the well site and exerted, or sought to exert, general and substantial control over it.[3]  Plaintiff's sole allegation in this regard is that GDS was present at the well site doing a discrete task for Cabot.  Thus, Plaintiff failed to allege facts sufficient to show that GDS was a "possessor" of the well site such that GDS owed a duty to protect or warn others present at the site.  Because Plaintiff did not, and cannot, allege facts to show that GDS owed a duty to warn and protect the Plaintiff from danger and dangerous conditions on the well site, this Court should dismiss Plaintiff's First Amended Complaint against GDS with prejudice.

### B. Even if GDS Were a Possessor, the Duty It Would Have Owed to Plaintiff Is Limited, and Plaintiff Did Not Plead Facts That Would Establish That GDS Breached That Duty.

Even if Plaintiff had alleged facts to show that GDS was a "possessor" of the well site, Plaintiff overstates the scope of any duties GDS would have owed to

---

[3] Plaintiff did not and cannot make such an allegation.  Indeed, during his deposition, Plaintiff testified that Richard Meredith, the owner of Dalton Logistics, the company that hired Landstar to move rig parts, was in control and in charge of the well location.

Plaintiff in that capacity.[4]  In addition, Plaintiff failed to allege facts sufficient to show that GDS breached the duty that would be owed by a possessor of property in this context.

### 1. At Most, Plaintiff Alleged That He Was a Licensee on the Property.

Assuming *arguendo* that GDS was a possessor, which it was not, Plaintiff was at most a "licensee" in relation to GDS.  A licensee is one who is privileged to enter or remain on the land only by virtue of the possessor's consent.  *Cresswell v. End*, 831 A.2d 673, 676 (Pa. Super. Ct. 2003); RESTATEMENT (SECOND) OF TORTS § 330.  Plaintiff alleged that he was on the location working as an independent contractor for Landstar, moving rig parts.  Doc. 42, ¶ 1.  Plaintiff was not hired by GDS and was not working either directly or indirectly for GDS.  Motion, ¶ 9.  At most, based on the alleged facts, Plaintiff was a licensee.  Given Plaintiff's legal status, GDS's duty to the Plaintiff, if any, would have been limited.

Under Pennsylvania law, a "possessor" of land owes a duty to licensees to use reasonable care to warn of a dangerous condition on the land (or *alternatively*

---

[4] The existence of any duties Cabot may have owed Plaintiff is, of course, a legal issue, and Plaintiff's conclusory assertions that particular duties exist are, therefore, entitled to no weight on a motion to dismiss.  *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005) (stating, with respect to a negligence claim, that "[t]he existence of a duty is a question of law for the court to decide"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint [for purposes of a motion to dismiss] is inapplicable to legal conclusions").

to make it safe) only if: (i) the possessor "knows or has reason to know of" the existence of the condition; (ii) the possessor should realize that the condition involves an unreasonable risk of harm to the licensee, and should expect that the licensee will not discover or realize the danger; *and* (iii) the licensee does not "know or have reason to know of" the condition and risk. *See [Ott v. Unclaimed Freight Co.,](about:blank) [577 A.2d 894, 898 (Pa. Super. Ct. 1990)](about:blank)* (describing the duty of care owed to licensees); Restatement (Second) of Torts § 342 (same). There is no duty to "protect" licensees and, therefore, GDS could not have breached such a duty.

Here, Plaintiff did not, and cannot, plead facts that would show that GDS breached a duty to use reasonable care to warn him of a dangerous condition—i.e., the sudden "dust cloud" that allegedly injured him at the well site. The "dust cloud," which was not a hidden or latent condition, arose suddenly as a result of the negligence of Defendant Factory Equipment. [Doc. 42](about:blank), ¶¶ 8 and 11.

Plaintiff did not allege any facts that would show that GDS had reason to anticipate that Factory Equipment would act in a negligent manner and create the purported "dust cloud," or that, at the time, GDS had any greater perception or knowledge of the alleged "dust cloud" than Plaintiff did. Indeed, on the facts alleged, GDS was in the exact same position as Plaintiff was with respect to the alleged dust cloud that was created by Defendant Factory Equipment's negligent conduct.

Simply put, the alleged "dust cloud" that was created as a result of Factory Equipment's negligence was not an "existing condition" of which GDS knew or had reason to know and should have warned Plaintiff. Because Plaintiff failed to allege facts to show that the dust cloud that allegedly formed as a direct result of Factory Equipment's negligence was an existing dangerous condition of which GDS knew or had reason to know and should have warned Plaintiff, this Court should dismiss Plaintiff's First Amended Complaint against GDS with prejudice.

### 2. Plaintiff Did Not Plead Facts to Demonstrate That He Was an Invitee.

Plaintiff failed to plead facts that would show he was an invitee and owed a higher duty to be "protected" from dangers on the location. Although "[p]ossessors of land owe a duty to invitees to protect them from foreseeable harm," *Cochrane v. Kopko*, 975 A.2d 1203, 1206 (Pa. Commw. Ct. 2009), Plaintiff failed to allege facts to show that he was an invitee.

An invitee is *invited* to enter or remain on land for a purpose for which the land is held open to the public (a public invitee), or for a purpose directly or indirectly connected with business dealings with the possessor of the land (a business visitor). *Cresswell*, 831 A.2d at 675; RESTATEMENT (SECOND) OF TORTS § 330. A possessor *desires* that an invitee enter his property; he does not merely *permit* the entry, as he does with a licensee. See *Cresswell*, 831 A.2d at 675.

As noted above, Plaintiff alleged that he was hired as an independent contractor for Landstar to move rig parts.  Doc. 42, ¶ 11.  GDS was hired by Cabot to "clean up" the well site.  Doc. 42, ¶ 12.  Plaintiff was not hired by GDS to assist in clean-up efforts, or for any other reason.  Plaintiff was not working either directly or indirectly for GDS, and Plaintiff failed to plead facts to show that GDS desired Plaintiff enter the well site.

Thus, Plaintiff was not an invitee and, therefore, even if this Court were to assume that GDS was a possessor, GDS would not owe a duty to "protect" Plaintiff from dangers on the well site.  Because Plaintiff failed to allege facts sufficient to support a claim that GDS breached a duty to "protect" him from dangers on the well site, this Court should dismiss Plaintiff's claim against GDS with prejudice.

### C. Plaintiff Specifically Alleged That Factory Equipment's Negligence Was the Cause of Plaintiff's Injuries, and That Negligence Cannot Be Imputed to GDS.

The only party to which Plaintiff attributes negligent conduct is Defendant Factory Equipment.  Specifically, Factory Equipment was negligent in the manner in which it dumped the "soil cement or … other hazardous substance," and thereby "caused" the "dust cloud" that supposedly injured him at the Cabot well site.[5]

---

[5] Although Plaintiff at one point baldly asserts that "GasSearch [GDS] … is the entity whose acts or omissions caused the cloud of dust … to be released," he alleges no facts whatsoever in support of this conclusory assertion.  Doc. 42, ¶ 5.  Plaintiff's unsupported, bald conclusion is not entitled to any weight.  *See Zupp*

Doc. 42, ¶¶ 1, 8 and 11.  GDS is not liable for the negligent acts of its independent contractor, Defendant Factory Equipment.

It is a "general and well-established rule that the employer of an independent contractor is not liable for physical harm caused another by an act or omission of the contractor or his servants." *Lorah v. Luppold Roofing Co., Inc.*, 622 A.2d 1383, 1384 (Pa. Super Ct. 1993).  As the Pennsylvania Supreme Court explained, "[t]he very phrase 'independent contractor' implies that the contractor is independent in the manner of doing the work contracted for[; h]ow can the party control the contractor who is engaged to do the work and who presumably knows more about it than the man who by contract authorized him to do it?" *Hader v. Coplay Cement Co.*, 189 A.2d 271, 277 (Pa. 1963).  For that reason, Pennsylvania law does not hold an employer of an independent contractor vicariously liable for the negligence of the contractor or the contractor's employees.  *See, e.g.*, *Keffer v. Bob Nolan's Auto Serv., Inc.*, 59 A.3d 621, 637-38 (Pa. Super. Ct. 2012) (affirming ruling that AAA could not be vicariously liable for the torts of its independent contractor truck drivers).  The courts have recognized that "[a]n independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and **his responsibility replaces that of the owner** who is, during the performance of the work by the contractor, out of possession

---

2013 WL 1935358, at *4 (court need not credit bald assertions and legal conclusions of complaint).

- 14 -

and without control over the work or the premises." *Marshall v. Se. Pa. Transp. Auth.*, 587 F. Supp. 258, 262 (E.D. Pa. 1984) (emphasis added).

Here, Plaintiff alleges that GDS hired Defendant Factory Equipment to transport and deposit soil cement on the well site. Doc. 42, ¶¶ 8 and 12. Merely hiring a contractor does not make GDS liable for that contractor's negligence. Plaintiff alleged no facts showing that GDS retained or exerted control over the operative details of *how* Factory Equipment performed this service, or that GDS somehow caused Factory Equipment to be "negligent in the manner in which it dumped the substance." Doc. 42, ¶¶ 8-12. There are simply no facts that would permit this Court to impute Defendant Factory Equipment's alleged negligence to GDS.

## V. CONCLUSION

WHEREFORE, because Plaintiff: (i) failed to allege facts sufficient to show that GDS was a possessor of the property such that a duty to warn or protect would arise; (ii) even if GDS were a possessor, Plaintiff failed to allege facts sufficient to show that GDS breached a duty; and (iii) Plaintiff specifically alleged that Defendant Factory Equipment's negligent conduct directly caused Plaintiff's injuries, and failed to allege facts that would permit this Court to impute that negligence to GDS, GDS respectfully requests that this Court grant its Motion and dismiss Plaintiff's negligence claim against GDS with prejudice.

Respectfully submitted,

Date:  March 18, 2014

/s/ Amy L. Barrette
Amy L. Barrette, Esq.  (PA 87318)
  amy.barrette@nortonrosefulbright.com
FULBRIGHT & JAWORSKI LLP
Southpointe Energy Complex
370 Southpointe Boulevard, Suite 300
Canonsburg, PA  15317
Telephone:  (724) 416-0400
Facsimile:  (724) 416-0404

*And*

Justin Tschoepe, Esq.  (TX 24079480)
  justin.tschoepe@nortonrosefulbright.com
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:  (713) 651-5151
Facsimile:   (713) 651-5246

Counsel for Defendant *GasSearch Drilling Services Corporation*