THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT MAGHAKIAN ) | CASE NO.  3:12-cv-02346-UN4 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | *Assigned to:* |
| ) | District Judge James M. Munley |
| CABOT OIL & GAS CORPORATION, ) | |
| FACTORY EQUIPMENT ) | |
| EXCAVATING, and GASSEARCH ) | **ORAL ARGUMENT REQUESTED** |
| DRILLING SERVICES ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT CABOT OIL & GAS CORPORATION'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant Cabot Oil & Gas Corporation ("Cabot") submits this Reply Brief in Support of Its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.     INTRODUCTION AND SUMMARY OF REPLY**

Plaintiff's Memorandum of Law in Opposition to Defendant Cabot Oil and Gas Corporation's Motion to Dismiss ("Opposition") presents no basis for permitting this action to proceed against Cabot. Cabot's motion demonstrated that the Court should dismiss Plaintiff's First Amended Complaint against Cabot because Plaintiff did not plead facts sufficient to show that he was an "invitee" of Cabot (such that Cabot would potentially owe him a duty to use reasonable care to

"protect" him from dangerous conditions on the well site), and did not plead facts sufficient to show that Cabot breached a duty to use reasonable care to "warn" him of a dangerous condition on the well site.  In response, Plaintiff insists that his factual allegations, if true, would establish both that he was an invitee of Cabot and that Cabot breached the duty of care it supposedly owed him as an invitee. Plaintiff is wrong on both counts.

First, as to whether he was an invitee, Plaintiff effectively concedes that he was not present on the site working for Cabot (or for another entity that was working for Cabot).  He points to no pleaded facts showing that the drilling rig he was there to help move belonged to Cabot (it did not), or that Cabot somehow "invited" him to come onto the premises.  Thus, Plaintiff has not sufficiently alleged that he was an invitee of Cabot.

Second, on the issue of breach, Plaintiff points to no factual allegations in his complaint that would show that Cabot knew or had reason to know of the existence of the alleged "dust cloud," the "dangerous condition" on the well site that supposedly injured Plaintiff.  Acknowledging that he must show that Cabot had knowledge of the "dust cloud," Plaintiff weakly asserts that Cabot "was and is in a position to know of the hazards associated with all aspects of its business." Opposition, Doc. 53, at 9.  This assertion is entirely unavailing.  The "dust cloud" of soil cement was not an inevitable "hazard" of Cabot's "business"; it was,

according to Plaintiff's own allegations, the result of the sudden negligent act of another party, Factory Equipment, which allegedly dumped "soil cement" in an improper manner while delivering it for another party (GDS).  And there is simply nothing in Plaintiff's First Amended Complaint that would show that Cabot was aware of Factory Equipment's activities on the well site or that Cabot had reason to know and anticipate that Factory Equipment would deposit soil cement in a negligent or unsafe manner, as Plaintiff alleges Factory Equipment did.  Thus, regardless of whether Plaintiff was a licensee or invitee, Plaintiff has not sufficiently alleged that Cabot breached any duty of care owed to him.

For these reasons, and as discussed more fully below, the Court should grant Cabot's motion and dismiss Plaintiff's complaint against Cabot with prejudice.

## II.     REPLY ARGUMENT

Plaintiff's Opposition contains a lengthy quote from this Court's decision in *Donahue v. Burns*, 2013 U.S. Dist. LEXIS 67498, at *6-9 (M.D. Pa. May 13, 2013)[1], regarding the applicable standard of review.  Opposition, Doc. 54, at 4-5. GDS agrees that the standard of review set out in *Donahue* applies here: the Court "should begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then "make a context-specific inquiry into the factual allegations in [the] complaint to determine if they

---

[1] Unreported cases are attached.

plausibly suggest an entitlement to relief." *Donahue*, 2013 U.S. Dist. LEXIS 67498, at *9 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). When this standard of review is applied, it is clear that Plaintiff has not stated a claim for relief against Cabot. Nothing in Plaintiff's Opposition changes this conclusion.

      **A.    Plaintiff's Argument That He Pleaded Facts Sufficient to Show That He Was an Invitee of Cabot Is Without Merit.**

In the memorandum in support of its motion to dismiss ("Memorandum"), Cabot demonstrated that Plaintiff's pleaded allegations are insufficient to show that Cabot breached a duty to protect because those allegations do not permit a conclusion that Plaintiff was an "invitee" of Cabot. Memorandum, Doc. 50, at 7-8. In response, Plaintiff insists that he pleaded facts sufficient to show that he was a "business invitee" of Cabot. That is false.

In contending that he was an invitee as to Cabot, Plaintiff quotes case law stating that "'employees of independent contractors … are 'invitees' who fall within the classification of 'business visitors.'" Opposition, Doc. 53, at 7. But it is unclear how this general rule could even apply to Plaintiff, for the First Amended Complaint states that Plaintiff was himself an independent contractor, not an employee of one. In any event, nothing in the case on which Plaintiff relies suggests that one's mere status as an employee of an independent contractor automatically makes one an invitee. To the contrary, in *Chenot v. A.P. Green*

*Services, Inc.*, 895 A.2d 55 (Pa. Super. Ct. 2006), the plaintiff was an invitee of the defendant when the defendant engaged the plaintiff's employer, as independent contractor, to perform work for the defendant on the defendant's premises. *See id.* at 58-59. Here, Plaintiff essentially concedes that he was not working directly, or even indirectly, for Cabot. *See* Opposition, Doc. 53, at 8. The First Amended Complaint states that Plaintiff was contracted by Landstar, not Cabot, to move a drilling rig at the site. Plaintiff's First Amended Complaint, Doc. 42, at ¶ 1. Plaintiff pleaded no facts that Cabot owned the drilling rig, or that Cabot "invited" him (or anyone else) to enter the site to move the rig. In reality, H&P owned the drilling rig, and was the ultimate beneficiary of any rig-moving service provided by Plaintiff. Under these circumstances, Plaintiff has not shown that he was an invitee of Cabot, as opposed to a mere licensee.

Citing and quoting *Cresswell v. End*, 831 A.2d 673, 675 (Pa. Super. Ct. 2003), Plaintiff also argues that the issue of his status as invitee or licensee is for a jury to decide, because "'[g]enerally, the determination of an entrant's legal classification is one of fact for the jury.'" Opposition, Doc. 53, at 8. This argument is unavailing. It may be that in many instances, there are disputed material facts that warrant submitting this issue to a jury. But as the *Cresswell* decision acknowledges, that is certainly not always the case. *See Cresswell*, 831 A.2d at 675 ("'Where the evidence is insufficient to support an issue, … it may be

appropriate for the court to remove that issue from the jury.'"). Nothing in *Cresswell* suggests that Plaintiff is automatically entitled to go to a jury on this (or any other) issue, or is somehow exempt from having to plead facts sufficient to support his claim to invitee status.

## B. Plaintiff's Argument That He Has Sufficiently Alleged a Breach of Duty by Cabot Is Without Merit.

In its Memorandum, Cabot also demonstrated that Plaintiff did not plead facts sufficient to show that Cabot breached a duty to use reasonable care to warn him of a dangerous condition on the well site, *viz.*, the alleged "dust cloud" that supposedly injured him. Memorandum, Doc. 50, at 9-11. In response, Plaintiff concedes that, to prove a breach of this duty, he must ultimately show that Cabot had actual or constructive knowledge of the dangerous condition. *See* Opposition, Doc. 53, at 9 (citing *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643 (Pa. Super. Ct. 2002), for the proposition that a landowner owes a duty of care to warn an independent contractor of a dangerous condition that is "known or discoverable to the owner" and as to which the owner has "superior knowledge"). But Plaintiff can point to no allegations in the First Amended Complaint that Cabot knew or had reason to know of the alleged "dust cloud." There are no allegations that the "dust cloud" was a persistent or recurring condition plaguing the site; to the contrary, Plaintiff's allegations are that the "dust cloud" was a transitory, one-time event occasioned by the conduct of Factory Equipment, which was "negligent in the

manner in which it dumped the substance." Plaintiff's First Amended Complaint, Doc. 42, at ¶¶ 8, 11.

While admitting that he "did not specifically plead that Cabot Oil had superior knowledge," Plaintiff weakly asserts that Cabot "was and is in a position to know of the hazards associated with all aspects of its business." Opposition, Doc. 53, at 9. This assertion is unavailing. The "dust cloud" was not a "hazard" of Cabot's "business." It was, by Plaintiff's own telling, the result of an independent contractor (Factory Equipment) dumping a substance on the site in an improper or unsafe "manner." Plaintiff's First Amended Complaint, Doc. 42, at ¶¶ 8, 11. Plaintiff pleaded no facts showing that Cabot should have known or anticipated that Factory Equipment would do its work in the negligent or unsafe manner Plaintiff alleges it did.[2]

Plaintiff's failure to sufficiently allege that Cabot had actual or constructive knowledge of the dust cloud would be fatal to his claim even if Plaintiff were deemed an *invitee*. "Under Pennsylvania law, the possessor of land is not the insurer of the safety of those on the premises, and the mere existence of a harmful

---

[2] Further confirming that Cabot could not have breached any duty owed to Plaintiff on the facts alleged is RESTATEMENT (SECOND) OF TORTS § 344, which holds that a "possessor" of land could be liable under certain circumstances for physical harm caused to entrants on the land by the negligent acts of "third persons," *but only if* the "possessor" holds the land *open to the public* for entry for his business purposes. There is no allegation that the well site is open to the public, and of course it is not.

condition or the mere happening of an accident is not evidence of a breach of duty of care to invitees." *Gales v. United States*, 617 F. Supp. 42, 43 (W.D. Pa. 1985). To prevail on a negligence claim, a plaintiff must plead and prove, *inter alia*, that the possessor knew, or in the exercise of reasonable care should have known, of the existence of the condition that caused the harm. *Id.* When the condition is a transitory one traceable to persons other than those for whom the possessor is ordinarily accountable, there must be actual notice, or, alternatively, the condition must have existed for such a length of time that in the existence of reasonable care it should have been discovered (constructive notice). *See id.* at 44. "The duration of the hazard is important because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard.'" *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011). Similarly, if a possessor had no opportunity to remedy the condition, he cannot be deemed to have had constructive notice of it. *Lal v. Target Corp.*, 2013 U.S. Dist. LEXIS 47380, at *8 (E.D. Pa. Apr. 2, 2013) ("To prove constructive notice, Plaintiff must show, *inter alia*, that [the defendant] had an opportunity to remedy the dangerous condition.").

Here, Plaintiff does not allege that Cabot had actual notice of the "dust cloud"; the First Amended Complaint does not even allege that Cabot was present

at the well site on the date and time in question.  Furthermore, Plaintiff does not allege facts suggesting that the "dust cloud" was present for any appreciable length of time before it supposedly injured him, such that Cabot could possibly be charged with constructive knowledge of it.  To the contrary, Plaintiff alleges that the whole "incident" of which he complains consisted of a quick chain of events: about "mid morning" on the day in question, Factory Equipment dumped the soil cement negligently and a "large cloud of dust was created," and, "[a]t that time," Plaintiff was "exposed to the cloud of dust as it got in his eyes and on his face and it was breathed into his lungs."  Plaintiff's First Amended Complaint, Doc. 42, at ¶ 1; *see also id.* at ¶¶ 8, 11.  Though he did not plead this, Plaintiff further asserts in his Opposition that the so-called "hazardous substance"[3] was in fact dumped "in close proximity to his person," which also indicates that, at most, only a few, fleeting moments could possibly have passed between the creation of the alleged "dust cloud" and Plaintiff's alleged exposure to it—in other words, Cabot could

---

[3] Plaintiff asserts in his Opposition that he "has obtained [sic] an expert toxicologist who will testify as to the severe health risks associated with exposure to this hazardous substance and his medical conclusion that exposure to the hazardous substance was the direct cause of Maghakian's injuries." Opposition, Doc. 53, at 3 n.2.  This, of course, is irrelevant at the motion to dismiss stage.  But in any event, Cabot has retained a toxicologist who is prepared to refute the opinions of Plaintiff's "expert."  Soil cement is hardly the "hazardous substance" Plaintiff portrays it as, and it certainly did not cause any of his "injuries."

not possibly have had constructive knowledge of the alleged dangerous "dust cloud" condition in time to warn or protect.

Simply put, Plaintiff did not (and could not) allege facts that would show that Cabot breached a duty of care owed to him by not warning or protecting him with respect to Factory Equipment's alleged negligence, which, according to Plaintiff, is what "caused the cloud of soil cement and/or other hazardous substance to occur." Plaintiff's First Amended Complaint, Doc. 42, at ¶ 4. Cabot is not the insurer of Plaintiff's safety. This Court should dismiss Plaintiff's complaint against Cabot with prejudice.

## III.   CONCLUSION

WHEREFORE, Cabot requests that this Court grant its motion to dismiss Plaintiff's First Amended Complaint and enter an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the First Amended Complaint with prejudice for failing to state a claim upon which relief can be granted.

Respectfully submitted,

Date:  May 1, 2014

*/s/ Amy L. Barrette*
Amy L. Barrette, Esq.  (PA 87318)
   amy.barrette@nortonrosefulbright.com
FULBRIGHT & JAWORSKI LLP
Southpointe Energy Complex
370 Southpointe Boulevard, Suite 300
Canonsburg, PA  15317
Telephone:  (724) 416-0400
Facsimile:  (724) 416-0404

   *And*

Justin Tschoepe, Esq.  (TX 24079480)
   justin.tschoepe@nortonrosefulbright.com
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:  (713) 651-5151
Facsimile:   (713) 651-5246

Counsel for Defendant *Cabot Oil & Gas Corporation*