IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT MAGHAKIAN, | : | No. 3:12cv2346 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CABOT OIL & GAS | : | |
| CORPORATION, GASSEARCH | : | |
| DRILLING SERVICES | : | |
| CORPORATION, | : | |
| Defendants | : | |

## MEMORANDUM

Before the court are defendants' motions to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.  (Docs. 47, 49).  The motions are fully briefed and ripe for disposition.

## BACKGROUND

This personal injury claim arose from Plaintiff Scott Maghakian's (hereinafter "plaintiff") work as an independent contractor at the Jean Blaisure Natural Gas Well Site (hereinafter "well site") located in Dimock Township, Susquehanna County, Pennsylvania.  (Doc. 42, Pl.'s First Am. Compl (hereinafter "Compl.") ¶ 1).  Defendant Cabot Oil & Gas Corporation

(hereinafter "Cabot Oil") leased the well site. (Id.)[1] Cabot Oil, in turn, hired Helmerich & Payne, Inc. (hereinafter "H&P") to work on the well site.

On November 29, 2010, plaintiff prepared to haul an H&P drilling rig off the well site. (Doc. 50, Cabot Oil's Br. in Supp. at 2, n.2). While standing outside his truck, plaintiff alleges that Factory Equipment Excavating's (hereinafter "Factory Equipment") dump truck emptied its load of soil cement, which created a large hazardous dust cloud.[2] (Compl. ¶ 1). Plaintiff's exposure to this dust cloud hospitalized him for approximately one month. (Id.)

Based upon these facts, plaintiff filed a single-count negligence claim against Cabot Oil and Gassearch Drilling Services Corporation (hereinafter "GDS") (collectively "defendants"). On March 18, 2014, defendants filed motions to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), bringing the case to its present posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity statute, 28 U.S.C. §

---

[1] Although plaintiff alleges that Cabot Oil was the "lessor" of the property, Cabot Oil concedes that in actuality, as a company that leases property from landowners, it is a "lessee" of the well site. (Doc. 50., Cabot Oil's Br. in Supp. at 2, n.3).

[2] Factory Equipment was sub-contracted through Defendant Gassearch Drilling Services Corporation.

1332.  Plaintiff is a citizen of the state of Indiana.  (Compl. ¶ 6).  Defendant Cabot Oil is a corporation and citizen of the states of Delaware and Texas and incorporated in the state of Delaware with its principal place of business in the state of Texas.  (Id.)  Defendant GDS is a corporation organized and existing under the laws of the state of West Virginia with its principal place of business in the state of Pennsylvania.  (Id.)  Additionally, the amount in controversy exceeds $75,000.  Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.").  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Defendants filed their motions to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed

as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

  Plaintiff asserts a negligence claim against the defendants.  Under

4

Pennsylvania law, for a defendant to be liable for negligence, "[a] plaintiff must establish 'that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage.'" Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009) (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003)).

In Pennsylvania, "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." Micromanolis v. Woods Sch., Inc., 989 F.2d 696, 698 (3d Cir. 1993) (quoting Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983)). "Possessors of land owe a duty to invitees to protect them from foreseeable harm." Cochrane v. Kopko, 975 A.2d 1203, 1206 (Pa. Commw. Ct. 2009). A **business invitee** is one who is invited or permitted to enter or remain on the premises of another for a purpose directly or indirectly connected with business dealings between them. Phillips v. Winters' Cleaners & Tailors, Inc., 344 F. Supp. 1040, 1043-44 (E.D. Pa. 1972) aff'd, 485 F.2d 681 (3d Cir. 1973). A licensee is one who is privileged to enter or remain on premises only by virtue of the possessor's consent. Id.

To a business invitee, the possessor owes the duty to exercise reasonable care to make the premises safe for him, or to warn of dangers

5

which are known to the possessor or which the possessor should have become aware of in the exercise of reasonable care, and which are unknown to the invitee. Id. Thus, to prevail under these circumstances, a plaintiff must prove either that the proprietor had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition. Moultrey v. Great A & P Tea Co., 422 A.2d 593, 598 (Pa. Super. Ct. 1980).

To a licensee, the possessor of land owes the duty to warn of a dangerous condition only if the possessor has knowledge of the existence of the condition and realizes that the condition involves an unreasonable risk of harm to the licensee and that the licensee is not likely to discover its existence. Davies v. McDowell Nat. Bank, 180 A.2d 21 (Pa. 1962).

Both defendants move to dismiss plaintiff's negligence claim. We will address each of defendants' motions separately.

**I. Cabot Oil's Motion to Dismiss**

Cabot Oil argues that plaintiff failed to establish that he was a "business invitee" of Cabot Oil's, such that it owed him a duty to use reasonable care to protect him from dangerous conditions on the well site. Additionally, Cabot Oil contends that it did not breach its duty because plaintiff failed to allege that Cabot Oil knew or had reason to know of the hazardous dust cloud. We will address these arguments in turn.

**A. Plaintiff's Status**

The duty of care owed to plaintiff is based upon his status as to Cabot Oil. Initially, Cabot Oil disputes plaintiff's status and hence the duty of care owed. Plaintiff alleges he was Cabot Oil's business invitee. Whereas, Cabot Oil disagrees.

Here, plaintiff asserts that, as its business invitee, Cabot Oil owed him the highest duty of care.[3] Cabot Oil argues that plaintiff failed to establish that he was a business invitee. Specifically, Cabot Oil argues that plaintiff did not work for Cabot Oil nor did the drilling rig that plaintiff was hired to haul belong to Cabot Oil. Cabot Oil also asserts that plaintiff failed to demonstrate that it invited him onto the premises. Rather, Cabot Oil contends plaintiff was at most a licensee.

Plaintiff argues that he was Cabot Oil's business invitee because Cabot Oil possessed the premises and invited plaintiff to remain on the premises and perform work that indirectly benefitted Cabot Oil. In short, plaintiff alleges

---

[3] Cabot Oil does not dispute that it possessed the well site. Additionally, it also concedes the following: (1) it hired H&P for the purpose of performing drilling work on the well site; (2) H&P hired the company Dalton Logistics to move H&P's drilling rig parts from Cabot Oil's well site to another well site (Chief Oil & Gas, LLC's) in Sullivan County, Pennsylvania; (3) Dalton Logistics hired Landstar Corporation as an independent contractor to move the H&P drilling rig; and (4) plaintiff was contracted by Landstar to move the H&P drilling rig off Cabot Oil's well site. (See Doc. 49, Cabot Oil's Mot. to Dismiss ¶ 15, n.3).

that Cabot Oil is in the business of leasing property for the purpose of conducting various activities related to oil and gas drilling, exploration and production.  Plaintiff avers that his work related to Cabot Oil's business dealings because he was hired as an independent contractor to haul a drilling rig off of Cabot Oil's leased property and the rig itself belonged to a company hired by Cabot Oil (H&P).

We will find at this juncture that plaintiff has sufficiently alleged that he was Cabot Oil's business invitee.  Cabot Oil hired H&P to perform drilling work on its leased well site.  H&P hired Dalton Logistics which in turn contracted with Landstar to move H&P's drilling rig off the well site.  Landstar then contracted plaintiff to haul H&P's drilling rig.  As such, plaintiff has sufficiently alleged he was invited to enter or remain on Cabot Oil's property for a purpose that at least indirectly benefitted Cabot Oil.

   **B. Cabot Oil's Duty**

Cabot Oil next argues that plaintiff has failed to properly allege that it breached its duty of care. The Pennsylvania Supreme Court has stated that to prove a breach of the duty owed to a business invitee, a plaintiff must establish that the landowner had actual or constructive knowledge of the dangerous condition.  <u>Gutteridge v. A.P. Green Services</u>, Inc., 804 A.2d 643 (Pa. Super. Ct. 2002).  Stated differently, the plaintiff must demonstrate that

the landowner had knowledge that the dangerous condition was a type that an invitee would not be likely to discover or protect themselves against, and that the landowner failed "to exercise reasonable care to protect [the invitee] against the danger." Summers v. Giant Food Stores, Inc., 743 A.2d 498, 506 (Pa. Super Ct. 1999).

Cabot Oil argues that plaintiff failed to allege that it knew or had reason to know of the hazardous dust cloud. Cabot Oil asserts that it was impossible for it to have known of the condition because the dust cloud was not an "existing condition," or a persistent condition plaguing the site, nor was it a latent or hidden defect of which it had special knowledge. Instead, Cabot Oil contends the dust cloud was a "transitory, one-time event" arising from Factory Equipment's improper dumping.

Plaintiff claims that Cabot Oil had the responsibility to know of all hazards associated with any aspects of its business. Plaintiff concedes that Cabot Oil may not have had "superior knowledge" of the existence of the condition, but nevertheless asserts that, as the lessee of the premises, Cabot Oil was in the better position to appreciate the inherent hazardous risks associated with all aspects of its business.

Viewing plaintiff's allegations as true, and drawing all reasonable inferences therefrom in plaintiff's favor, we find that plaintiff has sufficiently

alleged that Cabot Oil breached its duty of care. Cabot Oil is in the business of leasing property for the purpose of conducting various activities related to oil and gas drilling, exploration and production. Factory Equipment's dumping soil cement as part of a clean up project on Cabot Oil's well site was standard operating procedure related to Cabot Oil's drilling, exploration and production business. Cabot Oil had actual or constructive knowledge of the dangerous condition. As such, Cabot Oil owed plaintiff the duty to exercise reasonable care to prevent the occurrence of the hazardous dust cloud or, alternatively, to warn plaintiff of the hazardous substance contained in the soil cement and the need to keep a safe distance from its dumping and its failure to take any such precautionary action may constitute a breach of its duty of care. Accordingly, Defendant Cabot Oil's motion to dismiss plaintiff's first amended complaint pertaining to the issues of duty and breach will be denied.

## II. GDS' Motion to Dismiss

The court next addresses Defendant GDS' motion to dismiss. Plaintiff contends that GDS is liable for his injuries because GDS possessed the well site and negligently failed to provide a safe work environment. GDS argues that plaintiff failed to establish that it possessed the property and, even if it did, it only owed plaintiff a duty of care as a licensee— a duty that GDS failed to breach. The court will address the issues of possession, duty and breach

*in seriatim*.

**A. Possession**

As noted above, the possessor of land owes a duty of care to those who enter the property. In Pennsylvania, "[i]n order for a party to be a 'possessor' of land, it must meet one of the following descriptions: it must be in occupation of the land with the intent to control it, it must have been in occupation of the land with intent to control it if no other party has done so subsequently, or it is entitled to immediate occupation if neither of the other alternatives apply." Blackman v. Fed. Realty Inv. Trust, 664 A.2d 139, 142 (Pa. Super. Ct. 1995). Simply being present on the land (or even being an owner of the land) is insufficient to make one a "possessor." Rudy v. A-Best Prods Co., 870 A.2d 330, 333 n.4 (Pa. Super. Ct. 2005).

In the instant case, GDS argues that plaintiff failed to establish that GDS occupied the well site with the intent to control it. GDS asserts it did not possess the premises. Rather, GDS was merely on the well site as Cabot Oil's contractor to clean up the well site. Plaintiff contends GDS possessed the well site. Specifically, plaintiff alleges GDS is Cabot Oil's wholly owned subsidiary and he was invited to remain on the premises to perform work which indirectly benefitted Cabot Oil. Moreover, plaintiff asserts that GDS oversaw the well site's clean up on behalf of Cabot Oil and plaintiff's hauling

of the drilling rig related to the clean up project.  Finally, plaintiff avers that GDS instructed Factory Equipments' dump trucks to come onto the well site and dump the hazardous soil cement.

After careful review, we find that plaintiff has plead sufficient facts to establish that GDS possessed the well site. GDS may have occupied the well site based on its capacity as subsidiary to the lessee of the well site, Cabot Oil.  Additionally, GDS oversaw the clean up project and hired the company that dumped the hazardous soil cement.  These facts may demonstrate that GDS occupied the well site with intent to control it.

### B. Plaintiff's Status

Having determined that GDS may have possessed the well site, the court next addresses whether plaintiff was GDS' business invitee or licensee. In Pennsylvania, a **business invitee** is one who is invited or permitted to enter or remain on the premises of another for a purpose directly or indirectly connected with business dealings between them.  Phillips v. Winters' Cleaners & Tailors, Inc., 344 F. Supp. 1040, 1043-44 (E.D. Pa. 1972) aff'd, 485 F.2d 681 (3d Cir. 1973).  A licensee is one who is privileged to enter or remain on premises only by virtue of the possessor's consent.  Id.  As noted above, the law provides a higher duty of care to a business invitee than to a licensee.  To a business invitee, a possessor owes the duty to exercise

reasonable care, both to make the premises safe, and to discover and make known dangers which a reasonable inspection would disclose. See Phillips, 344 F. Supp. at 1044. To a licensee, the possessor owes the duty to warn of a dangerous condition only if it has knowledge of the existence of the dangerous condition **and** realizes that the condition involves an unreasonable risk of harm to the licensee- a risk of harm that the licensee is not likely to discover on his own. Davies, 180 A.2d at 24.

Here, GDS argues that plaintiff failed to demonstrate that he was GDS' business invitee; rather, plaintiff was a licensee. Specifically, GDS asserts that it did not invite plaintiff onto the well site nor was plaintiff working for GDS. Instead, GDS avers plaintiff performed the separate and unrelated task of moving a drilling rig at the behest of a different company, Landstar. GDS, therefore, contends that plaintiff and GDS were fellow independent contractors, each present on the well site performing designated activities for different companies. As such, GDS argues that it merely owed plaintiff a duty of care as a licensee.

Plaintiff contends that he was GDS' business invitee. Specifically, plaintiff asserts that his task of moving a drilling rig off the well site indirectly benefitted GDS. Moreover, plaintiff alleges that GDS instructed Factory Equipment's dump trucks to come onto the well site and dump the

13

hazardous soil cement. Accordingly, plaintiff asserts that GDS owed him a duty to take adequate precautions to prevent or contain the dust cloud or to warn plaintiff and others of the danger.

We find at this juncture that plaintiff has plead sufficient facts to establish he was GDS' business invitee. Plaintiff was working pursuant to a clean up project on the well site, and GDS oversaw the entire clean up project. GDS was responsible for the presence and operations of Factory Equipment's dump truck while on the well site. As such, plaintiff has sufficiently alleged he was invited to enter or remain on the well site for a purpose that indirectly benefitted GDS. Under the facts as plead in the complaint, GDS may have had a duty to inspect the load contained in Factory Equipment's dump truck. Accordingly, we will find that GDS owed plaintiff a duty as a business invitee.

### C. Duty

GDS next asserts that even if it owed a duty to plaintiff, plaintiff failed to demonstrate that it breached its duty to warn or protect plaintiff from the hazardous substance contained within the soil cement dust cloud. Plaintiff alleges GDS was responsible for the negligent dumping of the soil cement because GDS instructed Factory Equipment's dump truck to come onto the well site and empty its load of soil cement.

Under Pennsylvania law, a possessor of land that knows or by the exercise of reasonable care would discover a dangerous condition that involves an unreasonable risk of harm to unknowing invitees is subject to liability for physical harm caused to such invitees if the possessor fails to exercise reasonable care to protect them against the danger.  Rudy, 870 A.2d at 333 (quoting Gutteridge, 804 A.2d at 656).

Here, GDS argues that plaintiff failed to demonstrate that it breached a duty to use reasonable care to warn plaintiff of the dangers present in the soil cement dust cloud because the dust cloud was sudden and occurred as a result of Factory Equipment's negligent dumping.  GDS asserts that plaintiff failed to establish that GDS had reason to anticipate Factory Equipment's negligence or that GDS had any greater perception or knowledge of the dust cloud than plaintiff.

Plaintiff avers that GDS was responsible for any hazards associated with operations under its direct control, such as Factory Equipment's soil cement dumping.  While GDS maintains that it lacked "superior knowledge" of the existence of the condition, plaintiff contends that GDS was in the better position to appreciate the inherent hazardous risks associated with operations under its direct control.

Taking plaintiff's allegations as true, we will find that GDS had a duty

15

to inspect Factory Equipment's dump truck and that their failure to do so may constitute a breach of its duty. Had GDS conducted such an inspection, they may have detected that the soil cement contained a hazardous substance, allowing GDS to issue warnings to persons on the premises like plaintiff who were unlikely to realize the danger. GDS's failure to exercise this reasonable care to inspect and warn or make safe the dangerous condition involving the soil cement amounts to a breach of its duty of care owed to plaintiff. As such, Defendant GDS' motion to dismiss plaintiff's first amended complaint will be denied.

**Conclusion**

For the reasons stated above, we find that plaintiff has plead sufficient facts to state a cause of action against both defendants. Defendant Cabot Oil's motion to dismiss plaintiff's first amended complaint will therefore be denied. Additionally, Defendant GDS' motion to dismiss plaintiff's first amended complaint will be denied.

**Date: August 20, 2014**                    **s/ James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**